PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4282
_____

UNITED STATES OF AMERICA

v.

ANTHONY MAYO,
a/k/a Billy Silks

Anthony Mayo,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 1-00-cr-00336-002)
District Judge:  Hon. Sylvia H. Rambo
_____

Argued
October 12, 2017

Before:   CHAGARES, JORDAN, and FUENTES, *Circuit Judges.*

(Filed: August 22, 2018)
_____

James V. Wade
Federal Public Defender Middle District of Pennsylvania
Frederick W. Ulrich   [ARGUED]
Office of Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
        *Counsel for Appellant*

Bruce Brandler
United States Attorney
David J. Freed
Carlo D. Marchioli   [ARGUED]
Kate L. Mershimer
Office of United States Attorney
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, PA 17108
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

This appeal involves one of the many second or successive motions for post-conviction relief under 28 U.S.C. § 2255 that have been filed in the wake of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). *Johnson* invalidated the "residual clause" of the definition of "violent felony" found in the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii). Anthony Mayo is currently serving a twenty-three year term

of imprisonment for a 2001 conviction, imposed under the ACCA's recidivist enhancement provision, 18 U.S.C. § 924(e)(1). He was convicted of being a felon in possession of a firearm, and his sentence was enhanced based on his having committed three prior offenses that the District Court treated as violent felonies under the ACCA. Those predicate offenses, all under Pennsylvania law, are an aggravated assault, for which he was convicted in 1993, and two robberies, for which he was convicted in 1993 and 1994. Mayo argues that, in light of *Johnson*, his sentence is now unconstitutional because none of his prior convictions were for crimes that qualify as a "violent felony" as defined in the ACCA.

The District Court rejected Mayo's *Johnson* claim, concluding that each of the convictions in question was indeed for a violent felony and hence a predicate for enhancing his sentence. At least as to the aggravated assault conviction, however, the Court erred. That conviction was under 18 Pa. Cons. Stat. § 2702(a)(1), which prohibits "attempt[ing] to cause serious bodily injury to another, or caus[ing] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" As Pennsylvania interprets § 2702(a)(1), it does not necessarily involve the element of physical force required by the Supreme Court's interpretation of the ACCA. Thus, at least one of the convictions that the District Court relied on to enhance Mayo's sentence does not qualify as a violent felony, and we will vacate and remand for further proceedings.

3

## I.    BACKGROUND

Being a felon in possession, in violation of 18 U.S.C. § 922(g)(1), is an offense that typically carries a maximum penalty of ten years' imprisonment. *Id.* § 924(a)(2).[1]  But the ACCA ups the ante.  It states that "a person who violates section 922(g) … and has three previous convictions … for a violent felony … committed on occasions different from one another, … shall be fined … and imprisoned not less than fifteen years[.]"  18 U.S.C. § 924(e)(1).  The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year … that [A] has as an element the use, attempted use, or threatened use of physical force against the person of another; or [B] is burglary, arson, or extortion, involves use of explosives, or [C] otherwise involves conduct that presents a serious potential risk of physical injury to another[.]"  *Id.* § 924(e)(2)(B).  The three alternative clauses, labeled here as [A], [B], and [C], are commonly referred to, respectively, as the force or elements clause, the enumerated offenses clause, and the residual clause.  As none of Mayo's predicate offenses is listed in the enumerated offenses clause, we are concerned here only with whether his ACCA-enhanced sentence was based on the now-unconstitutional residual clause or the elements clause.

---

[1] Specifically, § 922(g) provides, in pertinent part, that "[i]t shall be unlawful for any person--(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year … to … possess … any firearm[.]"  18 U.S.C. § 922(g)(1).  Section 924 then provides that a person violating § 922(g) "shall be fined as provided in this title, imprisoned not more than 10 years, or both."  *Id.* § 924(a)(2).

4

### 1. *Mayo's 2001 Felon-In-Possession Conviction*

In late 2000, a grand jury returned a five-count indictment against Mayo and a coconspirator, alleging that the pair had used guns in connection with several drug trafficking offenses.[2] The indictment included the felon-in-possession charge leading to the sentence presently at issue, and it also recited Mayo's 1993 Pennsylvania aggravated assault conviction and his 1993 and 1994 Pennsylvania robbery convictions. Pursuant to a written agreement, Mayo pled guilty to the gun charge and acknowledged that, based on § 924(e), he faced a mandatory minimum sentence of fifteen years' imprisonment, with a maximum of life imprisonment. At the plea hearing, the government represented that Mayo had three prior convictions that qualified as violent felonies under the ACCA. Prior to accepting his plea, the District Court confirmed that Mayo had unlawfully possessed a firearm and that he had been convicted of the aggravated assault and robbery crimes listed in the indictment. The Court also reiterated that he faced a fifteen-year mandatory minimum sentence.

The Presentence Investigation Report ("PSR") discussed the offense of conviction and provided further details on Mayo's three earlier convictions.[3] Then, applying

---

[2] We address solely the claims pertaining to Mayo's motion as set forth in the certificate of appealability.

[3] Although not listed in the PSR, it is undisputed that Mayo's predicate convictions were for Pennsylvania

5

the 2000 version of the United States Sentencing Guidelines (the "guidelines"), it set forth Mayo's offense level as 31 and his criminal history as category VI, yielding a guidelines imprisonment range of 188-235 months. Mayo did not file any objections to the PSR.

At his 2001 sentencing, Mayo conceded "the specific factual allegations attributed to [him]," which were "almost identical" to what he had acknowledged at the plea hearing. (App. at 72.) He also said that the criminal history was correct. The District Court ultimately adopted the PSR's findings and issued a sentence based on the ACCA enhancement. The sentence issued without specification of whether the Court was relying on the elements clause or the residual clause.[4] The Court sentenced Mayo to a twenty-three year (276-month) term of incarceration, which exceeded the recommended guidelines range. In the Court's view, Mayo demonstrated "a strong likelihood of recidivism," (App. at 87), and an upward departure was warranted because his criminal history significantly underrepresented the seriousness and extent of his past crimes, and his offense level failed to account for the risk he posed by carrying a "high capacity semi-automatic firearm," (App. at 88). Mayo

aggravated assault, in violation of 18 Pa. Cons. Stat. § 2702(a)(1), and robbery, in violation of 18 Pa. Cons. Stat. § 3701(a)(1)(ii). In a letter to the parties, dated October 26, 2016, the District Court summarized the state court records identifying those subsections, which neither party contests.

[4] Again, no one at any stage has contended that the enumerated offenses clause is in play.

6

appealed his sentence, but we affirmed.  *United States v. Mayo*, 59 F. App'x 457 (3d Cir. 2003).

## 2. *Mayo's § 2255 Motions*

Mayo later filed a motion under 28 U.S.C. § 2255, to vacate or correct his sentence.  The District Court denied the motion, and we declined to issue a certificate of appealability.

A decade later, in 2016, the Supreme Court issued its decision in *Johnson*, invalidating the residual clause of the ACCA as unconstitutionally vague.  It subsequently declared that ruling retroactive in *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).  Based on *Johnson*, Mayo filed a second § 2255 motion seeking resentencing, and, as required by 28 U.S.C. §§ 2244 and 2255, he sought permission from us to pursue that second effort at post-conviction relief.  We granted his request, stating that Mayo "ha[d] made a prima facie showing that his proposed § 2255 motion contains a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that was previously unavailable." (App. at 112.)

In his second § 2255 motion, Mayo argued that his prior conviction for aggravated assault and his two prior convictions for robbery no longer qualify as violent felonies after *Johnson* invalidated the residual clause, and therefore that his ACCA-based sentence violates his due process rights. Specifically, he contended that he had already served the ten-year statutory maximum sentence that would have applied but

7

for the ACCA enhancement.[5]   The government responded with a motion to dismiss, saying that the District Court lacked jurisdiction because Mayo failed to establish that he is entitled to proceed on a second § 2255 motion, as he had not established that his sentence was based on the residual clause such that *Johnson* even applies.  The government also argued, on the merits, that Mayo's convictions still qualify as violent felonies under the ACCA's elements clause.

The District Court agreed with that latter argument, and it denied Mayo's motion on the merits, without addressing the jurisdictional challenge.   It rejected his argument that Pennsylvania's aggravated assault statute, 18 Pa. Cons. Stat. § 2702(a)(1), lacks the requisite element of force necessary for a conviction under it to categorically constitute a violent felony.  Reviewing the facts as to the aggravated assault conviction, the Court noted that Mayo had "hit [the victim] on the head with a brick, punched and kicked [the victim] while lying on the ground, and hit [the victim] with a glass bottle[.]"  (App. at 8-9.)

Turning to the robbery convictions, the Court likewise rejected Mayo's legal arguments and noted that, in the first robbery conviction, Mayo "had an unidentifiable object in his hand and told the victim, I'll blow your head off, get down," and in the second, he had "held a gun to [the victim] and ordered her to open the safe."  (App. at 10 (citations and internal quotation marks omitted).)  It concluded that those "facts, which were not objected to by Mayo," were sufficient

---

[5] Mayo represents that he has been in federal custody since October 4, 2001, and therefore, has already served more than ten years in prison.

8

to meet the ACCA's elements clause. (App. at 9-10; *see also id.* at 9 n.1, 10 n.2 (noting its reliance on uncontroverted facts in the presentence report as a "*Shepard* document")).)

Mayo appealed. We granted a certificate of appealability to address "whether [Mayo's] due process rights were violated by the use of his Pennsylvania aggravated assault and robbery convictions to enhance his sentence under the [ACCA]." (App. at 13-14 (citing *Johnson*, 135 S. Ct. at 2557; *Welch*, 136 S. Ct. at 1268; *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016)).)

## II. DISCUSSION[6]

Mayo's primary challenge on appeal is that neither his aggravated assault conviction nor his robbery convictions constitute violent felonies under the ACCA's elements clause, the only clause left after eliminating the enumerated offenses clause, which no one says is relevant, and the now-defunct residual clause. Mayo asserts that none of the supposed predicate offenses categorically require the "use of physical force against the person of another." (Opening Br. 16, 23.) Accordingly, he argues, the District Court violated his due

---

[6] The District Court's jurisdiction is disputed. Our jurisdiction is uncontested and is based on 28 U.S.C. §§ 1291 and 2253(a). Whether the District Court properly exercised jurisdiction over Mayo's second § 2255 motion and whether his prior convictions constitute violent felonies under the ACCA are questions of law, which we review *de novo*. *United States v. Peppers*, --- F.3d ---, 2018 WL 3827213, at *5 (3d Cir. Aug. 13, 2018).

process rights by "sentenc[ing] him beyond the otherwise applicable [ten]-year statutory maximum," and he is entitled to relief under § 2255. (Opening Br. at 12.) The government disagrees and counters that the District Court should have dismissed Mayo's second § 2255 motion for lack of jurisdiction, because "Mayo did not establish that his enhanced sentence …was based solely on those convictions qualifying as violent felonies under the residual clause."[7] (Answering Br. at 14.) We thus begin with the threshold question of whether the District Court had jurisdiction over Mayo's claim, and we conclude that it did.

## A.    Jurisdiction

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), a defendant in federal custody generally may file only one motion collaterally attacking his sentence on the grounds that it was imposed in violation of the Constitution or federal law. 28 U.S.C. § 2255(a), (b), (h). A prisoner may not pursue a second or successive motion unless the Court of Appeals certifies that the motion relies on either "newly discovered evidence" showing innocence or, as asserted in this case, that it relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.* § 2255(h). To gain that

---

[7] The Department of Justice has since stated that it no longer views the threshold requirements of § 2255 as jurisdictional. We nevertheless addressed and rejected the government's jurisdictional argument and held that those requirements are indeed jurisdictional. *See Peppers*, 2018 WL 3827213 at *6 n.3.

certification, the prisoner has to make at least a prima facie showing that one of those two gatekeeping requirements has been met. *Id.* § 2244(b)(3).

We recently addressed those gatekeeping requirements in *United States v. Peppers*, --- F.3d ---, 2018 WL 3827213, at *5-*9 (3d Cir. Aug. 13, 2018). We explained that "even after we authorize a second or successive petition, § 2244 still requires the district court to 'dismiss any claim presented in a second or successive application … unless the applicant shows that the claim satisfies [those] requirements[.]'" *Id.* at *5 (first and third alterations in original) (quoting 28 U.S.C. § 2244(b)(4)); *see also id.* at *6 (stating that district courts are not bound by our "preliminary examination"). District courts must conduct an independent analysis of whether a § 2255 movant has made that showing, before reaching the merits of a second or successive motion. *Id.*

Although we agree that the District Court here erred by failing to assess its jurisdiction, the record nevertheless establishes that Mayo met the "new rule of constitutional law" gatekeeping requirement and therefore that jurisdiction was proper. A prisoner satisfies that requirement when he establishes "that his sentence may be unconstitutional in light of a new rule of constitutional law made retroactive by the Supreme Court." *Id.* In *Peppers*, we held that the movant need only "show that it is possible he was sentenced under the now-unconstitutional residual clause of the ACCA," *id.* at *8, and that he "may require resentencing," *id.* at *7, as when a sentencing court did not specify which ACCA clause it relied on and the record does not otherwise include evidence establishing that the residual clause was not implicated, *id.* at *9.

11

Mayo has made that showing. As he correctly points out, the sentencing court did not specify under which clause his earlier offenses qualified as ACCA violent felonies. Moreover, the government does not direct us to any evidence in the record establishing that the residual clause was not relied on by the District Court. We therefore conclude that Mayo's sentence may have been based on the residual clause, and thus that the District Court had jurisdiction to review the merits of his second § 2255 motion.

## B.    Mayo's Aggravated Assault Conviction

We now turn to the parties' dispute over whether Mayo's aggravated assault conviction under 18 Pa. Cons. Stat. § 2702(a)(1) is categorically a violent felony under the ACCA's elements clause. According to Mayo, the District Court committed three errors in concluding that it is. First, he argues that the Court impermissibly relied on the underlying facts "to establish that his aggravated assault conviction fell within the [elements] clause." (Opening Br. 13, 21.) Next, he argues that aggravated assault as defined in Pennsylvania law lacks the element of physical force required by the ACCA. Finally, he argues that the minimum *mens rea* under § 2702(a)(1) is also categorically insufficient under the ACCA. We agree with his second argument and conclude that aggravated assault under Pennsylvania's § 2702(a)(1) does not categorically require the use of physical force against another.

### 1.    *The Categorical Approach*

When classifying a prior conviction under the ACCA, we begin with the "categorical approach," which requires a comparative analysis based solely on the elements of the crime of conviction contrasted with the elements of a generic version of that offense. *Mathis*, 136 S. Ct. at 2247-48. In this case, we compare aggravated assault as described in 18 Pa. Cons. Stat. § 2702 with the definition of "violent felony" set forth in the elements clause of the ACCA. As recently reiterated in *United States v. Ramos*, 892 F.3d 599 (3d Cir. 2018),[8] however, the categorical approach to reviewing a predicate conviction may be modified under certain conditions, namely when the statute at issue is divisible and when the record, based on so-called *Shephard* documents, establishes that a particular subsection of the statute is the basis of conviction.[9] *Id.* at 606-07. If those two conditions are met, then the modified categorical approach allows a court to assess whether a conviction under that particular statutory subsection would categorically qualify as a predicate offense under the ACCA. *Id.*; *see also Descamps v. United States*, 570 U.S. 254, 258 (2013) (clarifying that "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements").

---

[8] We apply current case law when reviewing the merits of Mayo's motion. *Peppers*, 2018 WL 3827213. at *11.

[9] *See generally*, *Shepard v. United States*, 544 U.S. 13, 16 (2005) (listing examples of documents that courts may consider when applying the modified categorical approach).

As to the first condition, Mayo acknowledges that Pennsylvania's aggravated assault statute "appears to be a divisible statute, setting forth separate elements … for committing the crime." (Opening Br. 16.) The second condition is also satisfied. The parties do not dispute the District Court's determination, based on the record, that Mayo was convicted of violating § 2702(a)(1).

Thus, we proceed to consider whether an aggravated assault conviction under § 2702(a)(1) categorically constitutes a violent felony under the ACCA's elements clause. When considering that question, we must "ignore the actual manner in which the defendant committed the prior offense" and "presume that the defendant did so by engaging in no more than 'the minimum conduct criminalized by the state statute.'"[10] *Ramos*, 892 F.3d at 606 (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)). We have said that "[t]his academic focus on a hypothetical offender's hypothetical conduct is not, however, an 'invitation to apply legal imagination' to the statute of conviction." *Id.* (quoting *Moncrieffe*, 569 U.S. at 191). "Rather, there must be legal authority establishing that there is a 'realistic probability, not a theoretical possibility, that the State would apply its statute to conduct'" that falls outside of the ACCA's definition of violent felony. *Id.* (quoting *Moncrieffe*, 569 U.S. at 191).

---

[10] To the extent the District Court may have relied on the underlying record to do more than pinpoint the specific statutory subsection under which the prior conviction was obtained, it strayed from the permissible bounds of the modified categorical approach.

14

## 2. *The ACCA's Element of "Physical Force"*

The parties dispute whether a Pennsylvania aggravated assault conviction under § 2702(a)(1) categorically requires "as an element the use, attempted use, or threatened use of physical force against the person of another," as is necessary to constitute a violent felony under the ACCA's elements clause. 18 U.S.C. § 924(e)(2)(B)(i). We conclude that it does not, because the text of the statute and Pennsylvania case law construing it establish that a conviction under § 2702(a)(1) does not necessarily require proof that a defendant engaged in any affirmative use of "physical force" against another person.

As used in the ACCA, the words "physical force" have a particular meaning. In another case called *Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson 2010*"), the Supreme Court stated that the common understanding of the word "physical" refers to "force exerted by and through concrete bodies," which "distinguish[es] physical force from, for example, intellectual force or emotional force." *Id.* at 138. It stated that the word "force" means "[p]ower, violence, or pressure directed against a person or thing," and "physical force" means "[f]orce consisting in a physical act," such as "a violent act directed against a robbery victim." *Id.* at 139 (alterations in original) (quoting Black's Law Dictionary 717 (9th ed. 2009)). The Court, mindful that it was interpreting the term "physical force" in the context of the ACCA's "statutory category of 'violent felon[ies],'" *id.* at 140 (alteration in original) (citation omitted), rejected the specialized common-law meaning of the word "force," which could be satisfied by a mere unwanted touch, *id.* at 139. It

15

explained that "the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes[.]" *Id.* at 140 (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004)). Thus, it concluded, the ACCA's "phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.*

That definition of "physical force" is controlling and is what we compare to Pennsylvania's "determination of the elements of [the predicate offense]." *Id.* at 138. To constitute a violent felony for purposes of the ACCA, then, a conviction for aggravated assault under § 2702(a)(1) must require as an element the use, or threatened use, of violent force capable of causing physical pain or injury against the person of another.

At the time of Mayo's felony conviction under § 2702(a)(1), that statutory subsection provided as follows:

> A person is guilty of aggravated assault if he:
>
> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa. Cons. Stat. § 2702(a)(1) (1993); *see also id.* § 2702(b) ("Aggravated assault under subsection (a)(1) … is a felony of the first degree.").[11]  As Mayo points out, § 2702(a)(1) does

---

[11] When applying the modified categorical approach, as is so with "the categorical approach, we look to the

elements of the statute as it existed at the time of the prior conviction," *Ramos*, 892 F.3d at 608 n.35 (quoting *United States v. Dahl*, 833 F.3d 345, 355 (3d Cir. 2016)). The full text of § 2702(a) provided as follows:

> (a) Offense defined.—A person is guilty of aggravated assault if he:

>> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

>> (2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to a police officer, firefighter, county adult probation or parole officer, county juvenile probation or parole officer or an agent of the Pennsylvania Board of Probation and Parole in the performance of duty or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty;

>> (3) attempts to cause or intentionally or knowingly causes bodily injury to a police officer, firefighter or county adult probation or parole officer, county juvenile probation or parole officer or an agent of the

17

not, on its face, include an element of "physical force"; rather, it focuses on whether a person causes, or attempts to cause "serious bodily injury." "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 2301.

---

> Pennsylvania Board of Probation and Parole in the performance of duty;
>
> (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon; or
>
> (5) attempts to cause or intentionally or knowingly causes bodily injury to a teaching staff member, school board member, other employee or student of any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school while acting in the scope of his or her employment or because of his or her employment relationship to the school.

18 Pa. Cons. Stat. § 2702 (1993). We note, however, the text of § 2702(a)(1) is the same today as it was in 1993, when Mayo was convicted under that subsection. *Compare* 18 Pa. Cons. Stat. § 2702(a)(1) (2018), *with* 18 Pa. Cons. Stat. § 2702(a)(1) (1993).

Mayo argues, and we must agree, that "[p]hysical force and bodily injury are not the same thing," (Opening Br. 16), at least not as interpreted by Pennsylvania courts. The case of *Commonwealth v. Thomas*, 867 A.2d 594 (Pa. Super. Ct. 2005), is instructive. In *Thomas*, the defendant was convicted of first-degree aggravated assault under § 2702(a)(1) after she starved her four-year-old son to death. *Id.* at 597. On appeal, she argued that "the evidence was not sufficient to sustain her conviction because the Commonwealth failed to demonstrate either the use of force or the threat of force." *Id.* The Pennsylvania Superior Court rejected that argument, saying that "evidence of the use of force or the threat of force is not an element of the crime of aggravated assault." *Id.*; *see also id.* (stating that the defendant cited no case law "demonstrate[ing] that Pennsylvania Courts have ever required proof of the use of force or the threat of force to sustain a conviction for aggravated assault"). Instead, the court concluded that the evidence presented was sufficient to establish that the defendant "did cause[] serious bodily injury to [her son], resulting in his death by starvation." *Id.* at 602.

Far from being a flight of imagination into extreme hypotheticals, our effort to understand how Pennsylvania actually applies its aggravated assault statute shows that convictions under § 2702(a)(1) have been upheld not because a defendant used physical force against the victim, but because serious bodily injury occurred, as with the deliberate failure to provide food or medical care. *Id.* at 597; *see also Commonwealth v. Taylor*, No. CP-63-CR-0000827-2012, 2015 WL 7576457, at *1, *6 (Pa. Super. Ct. Feb. 9, 2015) (affirming conviction under § 2702(a)(1) for defendant's "criminal neglect" of her twin six-year-old children, which

included failing to feed and clothe them). Those cases support Mayo's argument that, under § 2702(a)(1),[12] aggravated assault in Pennsylvania depends upon "the causation or attempted causation of … serious bodily injury," (Opening Br. 16), regardless of whether that injury was caused by the defendant's use or attempted use of physical force against the victim.

The government nevertheless contends that causing or attempting to cause serious bodily injury necessarily involves the use of physical force. Like the District Court, it relies on *United States v. Castleman*, 134 S. Ct. 1405 (2014), and in particular, the Supreme Court's statement that "'bodily injury' must result from 'physical force.'" (Answering Br. 25 (quoting *Castleman*, 134 S. Ct. at 1414).) *See also Castleman*, 134 S. Ct. at 1414 (concluding that a conviction under a Tennessee statute prohibiting "the knowing or intentional causation of bodily injury necessarily involves the use of physical force"). The government's argument fails because *Castleman* avowedly did not contemplate the question before us.

In *Castleman*, the Court was addressing whether the "knowing or intentional causation of bodily injury" satisfies

---

[12] Mayo pushes his argument too far, however, when he claims that none of the subsections of § 2702(a) requires the requisite element of physical force. That broad assertion is foreclosed by *Ramos*, in which we held that a conviction under subsection (a)(4), aggravated assault with a deadly weapon, "is categorically a crime of violence under the elements clause of the [g]uidelines." 892 F.3d at 610-12; *see also* 18 Pa. Cons. Stat. § 2702(a)(4).

"the common-law concept of 'force.'" *Id.* at 1414. It expressly reserved the question of whether causing "bodily injury" necessarily involves the use of "violent force" under the ACCA. *Id.* The Court was specifically considering examples of causing bodily injury through "the knowing or intentional application of force," which it went on to say could be applied directly, "as with a kick or punch," or indirectly, as in "the act of employing poison knowingly as a device to cause physical harm." *Id.* at 1415. It was in that context that the Court concluded, "[i]t is impossible to cause bodily injury without applying force *in the common-law sense*." *Id.* (emphasis added); *see also id*. at 1414 (noting that the element of "force" in common-law battery "need not be applied directly to the body of the victim" (citation omitted)).[13] The Court having reserved the question, it is clear that *Castleman* did not answer whether causing serious bodily injury without any affirmative use of force would satisfy the violent physical force requirement of the ACCA. *See United States v. Middleton*, 883 F.3d 485, 491 (4th Cir. 2018) (stating that "*Castleman* does not support the

---

[13] In *Castleman*, the Court also concluded that "the knowing or intentional application of force is a 'use' of force" under *Leocal*, acknowledging that "the word 'use' conveys the idea that the thing used … has been made the user's instrument." 134 S. Ct. at 1415 (citation omitted). For that additional reason, it rejected the defendant's argument that "sprinkl[ing] poison in a victim's drink" does not involve the use of force. *Id.* Rather, the Court explained, regardless of whether the harm occurred indirectly, the "use of force" is "the act of employing poison knowingly as a device to cause physical harm." *Id.*

21

[g]overnment's argument that any form of bodily injury requires violent force").

Nor is our case law relying on *Castleman* dispositive of the issue before us. In *United States v. Chapman*, 866 F.3d 129 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 1582 (2018), we considered whether a conviction under the federal criminal threat statute, 18 U.S.C. § 876(c), which requires "knowingly mailing a communication containing a threat to injure the person of the addressee or of another," constitutes a crime of violence under the guidelines. *Id.* at 136. Relying on *Castleman*, we rejected the defendant's argument that "indirect applications of harm fall outside of the [g]uidelines' ambit." *Id.* at 135-36. Instead, we concluded that "'use' of physical force, as used in § 4B1.2(a)(1) [of the guidelines], involves the intentional employment of something capable of causing physical pain or injury to another person, regardless of whether the perpetrator struck the victim's body." *Id.* at 133.

More recently, in *Ramos*, we relied on *Castleman* when concluding that a Pennsylvania conviction for aggravated assault with a deadly weapon under § 2702(a)(4), "necessarily involves the use of physical force" because it "similarly requires proving the attempted, knowing, or intentional causation of bodily injury[.]"[14]  892 F.3d at 612

---

[14] The Second Circuit recently reached a similar conclusion in *Villanueva v. United States*, 893 F.3d 123, 129 (2d Cir. 2018) (relying on *Castleman* to conclude that first-degree assault with a deadly weapon or dangerous instrument under Connecticut law, Conn. Gen. Stat. § 53a-59(a)(1), constitutes a violent felony under the ACCA, explaining that

(citation omitted). We reasoned that "it is nearly impossible to conceive of a scenario in which a person could knowingly or intentionally injure, or attempt to injure, another person with a deadly weapon without engaging in at least some affirmative, forceful conduct." *Id.* Moreover, we highlighted that "[the defendant] cite[d] no authorities establishing that an offender's inaction alone would be sufficient to sustain a § 2702(a)(4) conviction," and we expressly acknowledged but distinguished *Thomas* because it involved "only a conviction for *first-degree* aggravated assault under § 2702(a)(1)—a wholly separate criminal offense containing materially different elements than the offense at issue." *Id.*

So although we have concluded that there are some statutorily-defined offenses in Pennsylvania that forbid causing or threatening to cause "bodily injury" and that inherently involve the use or attempted use of "physical force," we have not said that bodily injury is always and only the result of physical force. *Cf. Middleton*, 883 F.3d at 491 (reasoning that the government "erroneously conflates the *use* of violent force with the *causation* of injury"). To the contrary, and unlike the facts presented in *Castleman*, *Chapman*, or *Ramos*, Pennsylvania case law establishes that a person violates § 2702(a)(1) by causing "serious bodily injury," regardless of whether that injury results from any physical force, let alone the type of violent force contemplated by the ACCA. *See Thomas*, 867 A.2d at 597. Thus, we reject the government's argument that a conviction

"the use of a 'substance' … constitutes use of physical force, for federal law purposes, because the relevant force is the impact of the substance on the victim, not the impact of the user on the substance").

23

under § 2701(a)(1) of Pennsylvania's aggravated assault statute necessarily involves the use of physical force. We conclude instead that § 2702(a)(1) lacks the element of violent physical force required by *Johnson 2010*.

At least two of our sister circuits have reached a similar conclusion. *See Middleton*, 883 F.3d at 491 (concluding that South Carolina's involuntary manslaughter offense is not an ACCA predicate under the elements clause "because it can be committed through a non-violent sale" of alcohol to a minor); *United States v. Resendiz-Moreno*, 705 F.3d 203, 205 (5th Cir. 2013) (concluding that the first-degree cruelty to children under Georgia law is not a crime of violence under the guidelines because it can be committed "by depriving the child of medicine or by some other act of omission that does not involve the use of physical force"). The government's position, however, is not without support.[15]

---

[15] Indeed, courts have divided on how far to extend *Castleman*. *See Villanueva*, 893 F.3d at 128 (reading *Castleman*'s discussion of "force" as "focus[ing] on the causation of a consequence, rather than the physical act of initiating an action that leads to a consequence"); *but see id.* at 133, 136 (Pooler, J., dissenting) (stating that the majority "improperly extends [*Castleman*] to the very statutory context" that the Supreme Court has "specifically and repeatedly differentiated" and misreads it as shifting the focus from "force" to the "causation of a consequence"); *see also United States v. Rice*, 813 F.3d 704, 706 (8th Cir. 2016) (relying on *Castleman* and concluding that "intentionally or knowingly … caus[ing] physical injury" includes the requisite use of force under the guidelines (alteration in original) (citation omitted)); *but see id.* at 707 (Kelly, J., dissenting)

24

*See United States v. Peeples*, 879 F.3d 282, 287 (8th Cir. 2018) (concluding that attempted murder under Iowa Code § 707.11 is a crime of violence under the guidelines, and stating that omissions, such as a caregiver withholding food, can constitute the use of force under *Castleman*); *United States v. Waters*, 823 F.3d 1062, 1066 (7th Cir. 2016) (concluding that, under the guidelines, an omission such as "withholding medicine causes physical harm, albeit indirectly, and thus qualifies as the use of force under *Castleman*"). But we do not consider the reasoning in those cases to be persuasive, because they conflate an act of omission with the use of force, something that *Castleman*, even if it were pertinent, does not support. *Cf. Castleman*, 134 S. Ct. at 1414-15 (likening "the act of employing poison knowingly as a device to cause physical harm" or firing a bullet at a victim, to "a kick or punch," as each act involves the "application" or "use of force," even though the resulting harm might occur indirectly).

We recognize that the result we reach here is wholly unsatisfying and counterintuitive. *Cf. Ramos*, 892 F.3d at 606 (stating, "[i]t may appear counterintuitive that a defendant who actually uses physical force against another person when committing a felony does not, by definition, commit a violent crime under the elements clause," but explaining that "the categorical approach, … is concerned only with the elements of the statute of conviction, not the specific offense conduct of an offender"). It is hard to imagine that Congress meant

_____

(suggesting that in prior cases, "[a] number of courts and judges, including a clear plurality of the courts of appeals, ha[d] concluded that a person may cause physical or bodily injury without using violent force," and listing cases).

for the kinds of crimes typically prosecuted as aggravated assault under state law to fall outside of the definition of "violent felony" in the ACCA.  But that's the categorical approach for you.  *See id.* at 613 (acknowledging that "faithful application of the categorical approach at times results in outcomes that frustrate [the] policy objective" underlying a recidivist enhancement provision).  The element of serious bodily injury in § 2702(a)(1) will most likely be the result of a defendant's use of violent physical force, as was undisputedly the case here.  But "most likely" does not satisfy the categorical approach, and logic dictates that the use of physical force required by the ACCA cannot be satisfied by a failure to act, which can be prosecuted under § 2702(a)(1). *See Thomas*, 867 A.2d at 597.

In sum, because Pennsylvania aggravated assault under § 2702(a)(1) criminalizes certain acts of omission, it sweeps more broadly than the ACCA's definition of "physical force." We are thus compelled to hold that Mayo's conviction under 18 Pa. Cons. Stat. § 2702(a)(1) does not qualify as a predicate offense under the elements clause of the ACCA.

## III.   CONCLUSION

For the reasons stated, we will vacate the order denying Mayo's motion to correct his sentence and remand the case for resentencing.  On remand, the District Court should address whether Mayo has any other ACCA predicate convictions.[16]   If not, and if, as Mayo represents, he has

---

[16] Without his aggravated assault conviction, Mayo appears to lack three qualifying convictions under the ACCA.

already served the ten-year statutory maximum sentence, he should be released, in accordance with the terms of supervision set forth in his judgment of conviction.

Thus, we do not address at this time whether Mayo's robbery convictions qualify under the ACCA's elements clause.