NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0420n.06

No. 18-5233

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 13, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| HORACE LEE DUNLAP, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| UNITED STATES OF AMERICA, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE: MERRITT, MOORE, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Petitioner-Appellant Horace Lee Dunlap appeals the denial of his habeas petition challenging his ACCA-enhanced life sentence for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g). Dunlap contends that his Tennessee convictions for voluntary manslaughter and aggravated assault do not qualify as predicate offenses under the ACCA. Because the record does not establish which variant of the offenses Dunlap was convicted of and not all variants of the offenses involve violent physical force, there is insufficient basis to hold that either of Dunlap's two convictions was for a crime of violence. Accordingly, we VACATE Dunlap's sentence and REMAND for proceedings consistent with this opinion.

## I. Background

### A. Factual Overview

On April 9, 1995, Dunlap shot Antonio Primm in the head at close range, pistol-whipped him, and robbed him of his cellphone and $150 in cash. *United States v. Dunlap*, 134 F.3d 372, at *1 (6th Cir. 1998) (Table of Decisions) (per curiam). Just over a week later, police searched a car in which Dunlap was a passenger and recovered a loaded gun with an obliterated serial number and a bag containing bullets "consistent with the bullet removed from Primm's head." *Id*. Dunlap was arrested for the shooting and was later indicted, as pertinent here, on two counts of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g). After a jury trial, Dunlap was convicted on both counts. *Id*.

The Pre-Sentence Investigation Report (PSR) determined that Dunlap qualified as an armed career criminal under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), based on his prior Tennessee convictions for two counts of possession of cocaine with intent to sell, voluntary manslaughter, assault and battery, and aggravated assault. (PSR ¶¶ 32, 39-40, 45-47, Sentencing Tr., Crim. R. 62, PID 238-39.)[1] Dunlap was convicted of the voluntary manslaughter offense in 1986. (Judgment, R. 9-1, PID 174.) He was originally charged with second-degree murder, but pleaded guilty to voluntary manslaughter. The plea petition, judgment form, affidavit of complaint, and arrest warrant are the only state-court records from the proceedings. Dunlap was convicted of the aggravated assault offense in 1989. (Crim. R. 9-2, at 4.) Dunlap was originally charged with two counts of aggravated rape, but pleaded guilty to one count of aggravated assault. (PSR ¶ 45.) The indictment and the judgment form are the only state-court records from the proceedings.

---

[1] There are two records in this case. The first is Dunlap's federal criminal trial record, referred to here as "Crim. R." The second is Dunlap's habeas record, which includes portions of his previous state records, referred to here as "R."

At the sentencing hearing on Dunlap's § 922(g) convictions, the district court adopted the PSR's conclusion that Dunlap was an armed career criminal. (Sentencing Tr., Crim. R. 62, PID 238, PSR ¶ 32.) Dunlap raised no objections to the PSR (*id.* at PID 171-73, PSR Addendum, R. 23-1 at 2) and the district court did not explain which prior convictions qualified as ACCA predicates or what clauses of the ACCA the court relied on. Nonetheless, the district court did summarize Dunlap's criminal history noting, *inter alia*, that Dunlap had "previously succeeded in killing a person with a handgun resulting in the voluntary manslaughter conviction in the state court" and "was convicted of aggravated assault involving the shoving of a glass crack pipe up the vagina of the victim, tearing the vagina of the victim . . ." (*Id.* at PID 239-40.) The district court concluded that because Dunlap "has repeatedly committed crimes of violence, a disregard for the rights of others, demonstrated a willingness to inflict whatever injury might flow and has not demonstrated the slightest remorse," he should "be in prison, and nowhere else at any time under any circumstances." (*Id.* at PID 240, 242.) The district court sentenced Dunlap to two concurrent terms of life imprisonment. (*Id.* at PID 243.)

## B. Procedural History

Dunlap appealed, challenging both his conviction and his sentence, and this court affirmed. *Dunlap*, 134 F.3d 372, at *1, 4. Dunlap filed two *pro se* § 2255 motions to vacate his sentence during the pendency of his direct appeal, which the district court dismissed without prejudice. *Dunlap v. United States*, 250 F.3d 1001, 1010 (6th Cir. 2001). *Dunlap*'s third § 2255 motion was denied as untimely, and this court affirmed. *Id.* Between 1999 and 2016, Dunlap filed at least five applications with this court seeking authorization to file a second or successive § 2255 motion, all of which were denied. *See* Sixth Cir. Case Nos. 02-5762, 03-5489, 04-5599, 08-5511, 13-5505.

In 2016, Dunlap again moved for authorization to file a second or successive § 2255 motion, this time challenging his armed career criminal classification under *Johnson v. United States*, 135 S. Ct. 2551 (2015), which invalidated the residual clause of the ACCA as unconstitutionally vague. This court granted the motion and transferred the case to district court. *See In re Dunlap*, No. 16-5730 (6th Cir. Sept. 22, 2016) (order).

The district court denied Dunlap's § 2255 motion, (Mem., R. 18, PID 245-54; Order, R. 19, PID 255) concluding that Dunlap had the requisite ACCA predicate offenses because he had two prior convictions for "serious drug offenses" and his voluntary manslaughter conviction qualified as a violent felony under the use-of-force clause. The district court reasoned that the relevant *Shepard* documents, including the affidavit of complaint, established that Dunlap was convicted of an offense that involved the use of a handgun. (Mem., R. 18, PID 248-53.) The district court found it unnecessary to address the aggravated-assault conviction.[2] (*Id*. at PID 248: "Because the court concludes that the Petitioner's prior conviction for voluntary manslaughter qualifies as a 'violent felony' under the 'use-of-force' clause, it is unnecessary to address the Petitioner's aggravated assault conviction.").

Dunlap then filed a motion for reconsideration, which the district court denied. Dunlap sought to appeal, (R. 31, PID 296), and this court certified two issues for appeal: "whether Dunlap's voluntary manslaughter conviction qualifies as a predicate crime of violence for purposes of the ACCA and whether the district court may rely on an 'affidavit of complaint' to determine which statute he violated and whether his offense involved forceful conduct." (Order of Sept. 18, 2018, at 6.)

---

[2] The district court also declined to address the assault and battery conviction. In its briefing before the district court, the government stated that it "will not address whether the petitioner's 1986 conviction for assault and battery qualified as a violent felony because it does not appear to be a felony conviction. (PSR ¶ 40)." (R. 9, PID 166 n.2.)

## II. Standard of Review

In reviewing a district court's denial of a § 2255 motion, "we apply a clearly erroneous standard to its factual findings and review its conclusions of law *de novo*." *Braden v. United States*, 817 F.3d 926, 929 (6th Cir. 2016) (quoting *Hyatt v. United States*, 207 F.3d 831, 832 (6th Cir. 2000)). We review de novo a district court's determination that a prior conviction constitutes a "violent felony" under the ACCA. *Id.* at 930.

## III. Discussion

### A. Applicable Law

The ACCA provides that anyone who violates 18 U.S.C. § 922(g) "and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another . . . shall be . . . imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B). We refer to § 924(e)(2)(B)(i) as the "use of physical force" or "elements" clause. We apply the categorical approach in determining "whether a defendant's previous state or federal felony convictions" satisfy the "use of physical force" clause. *United States v. Burris*, 912 F.3d 386, 392 (6th Cir. 2019) (en banc) (citing *Descamps v. United States*, 570 U.S. 254, 260-61 (2013)). "The categorical approach prohibits federal

sentencing courts from looking at the particular facts of the defendant's previous state or federal felony convictions; rather, federal sentencing courts 'may look only to the statutory definitions– *i.e.*, the elements–of a defendant's prior offenses.'" *Burris*, 912 F.3d at 392 (quoting *Descamps*, 570 U.S. at 258 (internal quotations and citation omitted)).

We have explained that "there are two steps in applying the categorical approach to determine whether a prior conviction constitutes . . . a violent felony under the ACCA." *United States v. Covington*, 738 F.3d 759, 763 (6th Cir. 2014). The first step is to "ask whether the statute at issue is divisible by determining if the statute lists 'alternative elements.'" *Id.* (citing *Descamps*, 570 U.S. at 277-79). When a prior conviction is for violating a divisible statute, this court may resort to a variant of the categorical approach labeled the "modified categorical approach." *Descamps*, 570 U.S. at 257. The modified categorical approach is a "tool" used in a "narrow range of cases" to identify which element formed the basis of a defendant's conviction when a statute has multiple alternative elements. *Covington*, 738 F.3d at 762. A court is permitted to "go beyond the mere fact of conviction[,]" *Taylor v. United States*, 495 U.S. 575, 602 (1990), and may "consult a limited class of documents" to determine which alternative in a divisible statute gave rise to a conviction, *Descamps*, 570 U.S. at 257. Such documents may include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). At the second step, the court must ask whether the variant of the offense supporting the conviction is a violent felony under 18 U.S.C. § 924(e)(2)(B), including whether it has an element necessarily involving the use, attempted use, or threatened use of violent physical force, or matches the elements of an enumerated statutory offense.

**B. Dunlap's Conviction for Voluntary Manslaughter under Tennessee Law**

In 1986, Dunlap was charged with second degree murder under Tenn. Code Ann. § 39-2-201 (1982) in the death of Frankie Jones. Dunlap eventually pleaded guilty to "voluntary manslaughter" with no statute of conviction identified. (Judgment, R. 9-1, PID 173.) Tennessee law criminalizes murder and manslaughter in more than one statute. Tenn. Code Ann. § 39-6-915(a) (1982) made it "murder in the second degree" to cause someone's death by providing liquor, and Tenn. Code Ann. § 39-2-201 (1982) made all murder second degree unless proven to be first degree. Similarly, Tenn. Code Ann. § 39-6-915(a) (1982) made it voluntary manslaughter to provide liquor leading to a fatal overdose with "no knowledge of the poisonous or injurious quality of such liquor," and Tenn. Code Ann. § 39-2-221 (1982) stated that "Manslaughter is the unlawful killing of another without malice, either express or implied, which may be either voluntary upon a sudden heat, or involuntary, but in the commission of some unlawful act."

Because the Tennessee voluntary manslaughter statutes[3] set out "one or more elements of the offense in the alternative," *Descamps*, 570 U.S. at 257, we apply the modified categorical approach and look to *Shepard* documents to determine whether Dunlap was convicted of voluntary manslaughter under the general manslaughter provision, Tenn. Code Ann. § 39-2-221 (1982), or the death-by-liquor provision, Tenn. Code Ann. § 39-6-915 (1982). *Shepard*, 544 U.S. at 16.

Although the record contains the plea petition, judgment form, arrest warrant, and affidavit of complaint, only the affidavit contains any information about the offense. The arrest warrant merely states that Dunlap was arrested on suspicion of second-degree murder. (R. 9-1, PID 175.)

---

[3] Normally, the record of a defendant's prior convictions includes the conviction offense by reference to a statute or the name of the offense sufficient to identify the crime and our analysis looks at whether the identified offense is divisible. Here, we have only the words "voluntary manslaughter," without a statutory cite, and the term describes more than one statutory offense. Because the situation is analogous to a divisible statute setting forth multiple alternative crimes all constituting voluntary manslaughter we apply the modified categorical approach.

The plea petition and the judgment form state that Dunlap was indicted for second-degree murder, but pleaded guilty to voluntary manslaughter; nothing specifies which statutory provision Dunlap admitted to violating when he was convicted. (Judgment, R. 9-1, PID 173; Plea Pet., R. 9-1, PID 177-78.) The affidavit of complaint dated October 18, 1995, states that probable cause is based on the following account by Fannie Jones:

> There are 3 witnesses who saw the suspect listed above [Horace Dunlap] pull a handgun from his waistband and fire multiple shots at the victim, near 1929 Batavia St—the victim [Frankie Jones] was struck at least 1 [one] time—the victim died from the gunshot wounds at approx 0400 10-18-85

(Affidavit of Complaint, R. 9-1, PID 176.) The caption of the affidavit states "Murder—Section 39-2-201 T.C.A." (*Id.*) Beyond this description, the affidavit of complaint contains no further information.

The government contends that because Dunlap was originally charged under the general second-degree murder statute, Tenn. Code Ann. § 39-2-201, his plea to voluntary manslaughter had to have been under Tenn. Code Ann. § 39-2-221, rather than under the liquor-fatality statute "because that is the only provision that would qualify as a lesser-included, or even related, offense." (Appellee Br. at 39-40.) However, the government cites no case law, and we could find none, indicating that a person pleading guilty to manslaughter as a "lesser or related" offense[4] of a charge under the second-degree murder statute would necessarily have to plead to the general manslaughter statute. Further, there is little case law from Tennessee clarifying the meaning of the term "related offense." *See* David Louis Raybin, 10 TENN. PRAC. CRIM. PRAC. & PROCEDURE § 22:15 ("In this context a 'related' offense is some offense similar in nature to that charged in the indictment," as in a case where "the defendant may be charged with robbery but the parties might

---

[4] *See* Tenn. R. Crim. P. 11(c)(1), which permits a defendant to plead guilty to a charged offense or a lesser or related offense.

agree that he be convicted of accessory after the fact which is a different offense, albeit related."). There is no support for the conclusion that Dunlap and the government lacked the authority to agree to a plea of guilty under the liquor-fatality statute.

This court has stated that "[a]n affidavit of complaint is a type of record that a district court can properly rely on in determining the nature of predicate offenses, consistent with the standards of *Shepard*." *United States v. Jones*, 453 F.3d 777, 780 (6th Cir. 2006). In *United States v. Kappell*, 418 F.3d 550, 558 (6th Cir. 2005), a jury found Kappell guilty of multiple counts of child abuse; he was sentenced to a mandatory term of life in prison because he had previously been convicted, on a plea of "no contest," of sexual abuse of a child under the age of twelve. Kappell argued on appeal that *Shepard* barred the district court from examining the "criminal complaint" that "contained facts reported by investigating officers." *Id.* This court disagreed, finding that the criminal complaint was an acceptable *Shepard* document because it was referred to at the plea hearing for Kappell's prior child-abuse conviction, where "Kappell, speaking through his lawyer, stipulated that the facts recited in the complaint were correct for purposes of entering his plea." *Id.*

The following year, in *United States v. Jones*, 453 F.3d at 780-81, this court held that a sentencing court may rely on an affidavit of complaint to determine whether offenses constitute single or multiple criminal episodes. This court explained that the affidavits of complaint alleged that Jones robbed "separate victims" in "separate locations" at gunpoint and therefore "amply support[ed] the District Judge's determination that the incidents constituted distinct and separate offenses." *Id.* However, in *United States v. Wells*, 473 F.3d 640, 647 n.5 (6th Cir. 2007), this court clarified that *Jones* stood for the proposition that sentencing courts may rely on affidavits of

complaint "only" for "the limited inquiry of whether prior offenses constitute a single criminal episode or multiple episodes."

This court addressed the issue again in *United States v. Medina-Almaguer*, 559 F.3d 420, 423-25 (6th Cir. 2009), which held that a state-court preliminary-examination transcript did not establish that a prior state conviction in California was for drug trafficking. This court noted the similarities between an affidavit of complaint and preliminary-examination testimony: both have "substantially greater indicia of reliability than mere police reports" because they are given "under oath and submitted in furtherance of formal prosecution." *Id.* at 424 (citing *Jones*, 453 F.3d at 780). Yet this court distinguished *Jones*, noting that "*Jones* did not address—it had no occasion to address—whether a sentencing court may rely on an affidavit of complaint to determine what kind of conduct a defendant necessarily admitted in pleading guilty." *Id.* This court noted that the relevant transcript "does not identify the conduct Medina-Almaguer necessarily admitted when he entered his guilty plea," explaining that "*Shepard* requires more than probable inferences and likely implications." *Id.*

Like the preliminary-exam transcript in *Medina-Almaguer*, the affidavit of complaint here does not identify the conduct Dunlap "necessarily admitted" in his guilty plea. Although the affidavit states that Dunlap was charged with the general provision of second-degree murder, it is silent regarding what Dunlap admitted when he pleaded guilty to voluntary manslaughter, and unlike in *Kappell*, there is no transcript of a plea proceeding in which Dunlap admits to the conduct alleged in the affidavit of complaint. *See Kappell*, 418 F.3d at 558-59. The affidavit provides facts establishing probable cause to believe that Dunlap was responsible for the death of Frankie Jones. *See Medina-Almaguer*, 559 F.3d at 423 (explaining that a statement of probable cause is a "gateway step in the criminal process" that does not establish what acts were actually admitted by

a later guilty plea). Because there are no admissions in the record, the district court erred in considering the facts in the affidavit of complaint to determine which voluntary manslaughter statute Dunlap was convicted of.

Next, the court must ask whether Tennessee voluntary manslaughter as a category is a violent felony under the ACCA. Because voluntary manslaughter is not an enumerated offense and the Supreme Court in *Johnson* struck down the residual clause, 135 S. Ct. 2551, Dunlap's manslaughter conviction can be an ACCA predicate only if it satisfies the use-of-force clause. Although it is unlikely that Dunlap was convicted under the Prohibition-era voluntary manslaughter death-by-liquor statute, in the absence of any *Shepard* documents identifying the specific crime of conviction, we must "presume that the conviction rested upon nothing more than the least of the acts criminalized." *Burris*, 912 F.3d at 406 (quoting *Moncrieffe*, 569 U.S. at 190-91).

Dunlap argues that his voluntary manslaughter conviction does not satisfy the ACCA's use-of-physical force clause because *Johnson v. United States*, 559 U.S. 133, 140 (2010), requires "force capable of causing physical pain or injury to another person." (Appellant Br. at 19.) Dunlap notes that unintentionally causing someone to die by alcohol "could be committed unwittingly, and thus it cannot satisfy the force clause since that clause does not reach accidental behavior." (*Id.* at 20.)

Tenn. Code Ann. § 39-6-915 made it voluntary manslaughter to provide liquor leading to a fatal overdose with "no knowledge of the poisonous or injurious quality of such liquor." A person could therefore violate the statutory provision unintentionally. The Supreme Court has repeatedly held that the use of force requires more than "negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (interpreting 18 U.S.C. § 16(a)); *see also Voisine v. United*

*States*, 136 S. Ct. 2272, 2278-79 (2016) (interpreting 18 U.S.C. § 921(33)(a)).  The word "use" concerns primarily (if not exclusively) the actor's state of mind regarding the conduct giving rise to the force and means "the 'act of employing' something."  *Voisine*, 136 S. Ct. at 2278 (citation omitted).  A person does not "employ" force accidentally; rather, to count as a "use" of force, the force "must be volitional[.]"  *Id.* at 2278-79; *Leocal*, 543 U.S. at 9 (concluding that "[w]hile one may, in theory, actively employ *something* in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident."); *United States v. Harper*, 875 F.3d 329, 331 (6th Cir. 2017) "[A] husband 'uses' force if he rams his wife into a wall, but not if he stumbles into her with the same effect.  For only when he rams her into the wall is the application of force volitional.").  Because voluntary manslaughter under Tenn. Code Ann. § 39-6-915 does not include the intentional use of physical force as an element, it does not satisfy the use-of-force clause.[5]

## C.  Dunlap's Tennessee Aggravated Assault Conviction

The government urges us to look beyond the COA—which is limited to consideration of Dunlap's voluntary manslaughter conviction—to affirm the district court on the basis that Dunlap's conviction of aggravated assault provides the necessary predicate conviction.  The aggravated assault indictment shows that Dunlap was originally charged with violating Tenn. Code Ann. § 39-2-603, which criminalized sexual intercourse causing bodily injury by the use of force.  (Rape Indictment, R. 9-2, PID 180-81.)  The government argues that when Dunlap pleaded guilty

---

[5] The Fourth Circuit has questioned whether intentional or reckless acts involving death by alcohol satisfy the use-of-force clause.  In *United States v. Middleton*, 883 F.3d 485, 489 (4th Cir. 2018), the petitioner was convicted under a South Carolina involuntary manslaughter law  that required the State to show the defendant killed another "without malice and unintentionally while the defendant was engaged in either (1) an unlawful activity not amounting to a felony and not naturally tending to cause death or great bodily harm, or (2) a lawful activity with a reckless disregard of the safety of others."  The Fourth Circuit reasoned that involuntary manslaughter could be committed using de minimis force, and not the violent force required by the ACCA.  *Id*. at 490.  ("To hold otherwise would allow any illegal sale—be it alcohol, cigarettes, fireworks, or even a fake identification card—to trigger the ACCA's force clause, simply because physical pain or injury eventually results from the sale.").

to aggravated assault, (Judgment Form, R. 9-2, PID 182), the "undisputed facts" before the sentencing court were that he had engaged in "unlawful sexual intercourse with a female by the use of force" and in "unlawful penetration of the female by using a glass pipe," that resulted in "lacerations to [the victim's] vagina." (Appellee Br. at 36.) However, the government provides no support for these assertions; as with the voluntary manslaughter conviction, the record contains no transcript of the plea proceeding and no plea agreement setting forth a basis for the plea.

The Tennessee aggravated assault statute defined the offense in six different ways:

(b) A person is guilty of the offense of aggravated assault, regardless of whether the victim is an adult, a child, or the assailant's spouse, if such person:

(1) Attempts to cause or causes serious bodily injury to another willfully, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(2) Attempts to cause or willfully or knowingly causes bodily injury to another with a deadly weapon;

(3) Assaults another while displaying a deadly weapon or while the victim knows such person has a deadly weapon in his possession;

(4) Being the parent or custodian of a child or the custodian of an adult, willfully or knowingly fails or refuses to protect such child or adult from an aggravated assault described in subdivisions (b)(1), (2), or (3);

(5) After having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit a battery against an individual or individuals, attempts to cause or causes bodily injury or commits or attempts to commit a battery against such individual or individuals; or

(6) Causes serious bodily injury to another by the operation of an automobile . . . or other motor vehicle as the proximate result of the driver's intoxication as set forth in § 55-10-401. . . .

Tenn. Code Ann. § 39-2-101(b) (1988).

The Tennessee aggravated assault statute is divisible; it contains six separate sections setting out different types of aggravated assault. Here, the *Shepard* documents indicate that in December 1988, Dunlap was indicted on two counts of aggravated rape for violating Tenn. Code

Ann. § 39-2-603 by causing personal injury by the use of force or coercion. (Rape Indictment, R. 9-2, PID 180-81.) Count one charged Dunlap with "engag[ing] in unlawful sexual penetration, to wit: sexual intercourse with [victim], causing personal injury to [victim] by the use of force and coercion in violation of Tennessee Code Annotated, Section 39-2-603." (*Id*. at PID 181.) Count two charged Dunlap with "engag[ing] in unlawful sexual penetration by inserting a glass pipe into the genital opening of [victim], causing personal injury to her by the use of force and coercion in violation of Tennessee Code Annotated, Section 39-2-603." (*Id.* at 180.) The judgment form states that Dunlap pleaded guilty to one count of aggravated assault, but provides no reference to a particular statutory provision. (*Id*. at PID 182.) He received a sentence of four years, concurrent with another case. (*Id*.) There are no other records reflecting any other information about his conviction.

The *Shepard* documents do not tell us that Dunlap pleaded guilty to a crime of violence. Neither the indictment nor the judgment form contains the specific provision of the aggravated assault statute to which Dunlap pleaded guilty. Although Dunlap was charged with aggravated rape, he pleaded guilty to aggravated assault, presumably under Tennessee Rule of Criminal Procedure 11, which allows a defendant to plead guilty to a "lesser or related" offense. Tenn. R. Crim. P. 11(c)(1). Tennessee courts have held that aggravated assault is not a lesser-included offense of aggravated rape. *State v. Swindle*, No. 01C01-9805-CR-00202, 1999 WL 254408 at *3 (Tenn. Crim. App., Apr. 30, 1999) (citing *State v. Cleveland*, 959 S.W.2d 548, 553-54 (Tenn. 1998)). As we explained with voluntary manslaughter, Dunlap pleaded guilty to a "related offense," but there is scant Tennessee case law defining this term, and, specifically, the limits it places on permissible plea offenses.

Because no *Shepard* document definitively states the specific aggravated assault provision to which Dunlap pleaded guilty, there is insufficient information about what Dunlap "necessarily" admitted at the time of his plea.

At step two, we must ask whether the offense the statute describes, as a category, is a violent felony under 18 U.S.C. § 924(e)(2)(B). Dunlap's conviction for aggravated assault does not match any of the enumerated offenses. *See, e.g., Covington*, 738 F.3d at 764. And because *Johnson* found the residual clause unconstitutional, we ask only whether Dunlap's conviction offense has as an element "the use, attempted use, or threatened use of physical force against the person of another." *Id*. at 763. "[I]f the *Shepard* documents . . . do not make clear under which subsection of the relevant statute a defendant was convicted, sentencing courts must 'presume that the conviction rested on nothing more than the least of the acts criminalized,'" *Burris*, 912 F.3d at 406 (quoting *Moncrieffe*, 569 U.S. at 190-91),—here, the failure to protect a child or adult from aggravated assault. "Willfully or knowingly fail[ing] or refus[ing] to protect [a] child or adult from an aggravated assault" does not involve the attempted or threatened use of force as an element. Tenn. Code Ann. § 39-2-101(b)(4). Although there is little Tennessee or Sixth Circuit case law on this particular provision, other circuits considering similar laws have found that failing to protect a child is not in itself a violent felony. *See, e.g., United States v. Mayo*, 901 F.3d 218, 227 (3d Cir. 2018) (holding that conviction for aggravated assault under Pennsylvania law was not a predicate offense under the ACCA and explaining that "convictions under § 2702(a)(1) have been upheld not because a defendant used physical force against the victim, but because serious bodily injury occurred, as with the deliberate failure to provide food or medical care."). Because Dunlap could have been convicted of failing to protect a child or adult from aggravated assault,

however remote the possibility, his aggravated assault conviction under Tennessee law is not categorically a violent felony.

**D. The Government's Argument that Dunlap Has Not Met His Burden under § 2255**

The government asks us to go beyond the COA and relies on *Potter v. United States*, 887 F.3d 785 (6th Cir. 2018), to argue that Dunlap, as a post-conviction petitioner, did not meet his burden to show that his sentence was enhanced on the basis of the residual clause. The government also asks us to revisit our holding in *United States v. Raines*, 898 F.3d 680 (6th Cir. 2018) (per curiam), which held that Raines, a petitioner filing an initial § 2255 motion, was not required to demonstrate that the district court relied on the residual clause in determining that his prior conviction for collecting credit by extortionate means qualified as a violent felony under ACCA.

We need not reach the government's arguments about *Potter* and *Raines* because the government waived them. Although the district court proceedings occurred before this court decided *Potter*, nothing stopped the government from arguing below that Dunlap needed to affirmatively prove that he was sentenced under the residual clause. As a general rule, "this court will not consider arguments raised for the first time on appeal," and we decline to do so here. *Roberts v. Galen of Va., Inc.*, 525 U.S. 249, 253–54 (1999) (declining to affirm lower court's decision based on arguments that were insufficiently developed before the lower court); *Overstreet v. Lexington–Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) ("'It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.'") (citation omitted).

**IV.**

For the reasons stated above, we **VACATE** Dunlap's sentence and **REMAND** for proceedings consistent with this opinion.