**[J-43-2022]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 5 EAP 2022 |
| | : | |
| Appellee | : | Petition for Certification of Question |
| | : | of Law from the United States Court |
| | : | of Appeals for the Third Circuit at |
| v. | : | No. 17-1861 |
| | : | |
| | : | ARGUED: September 13, 2022 |
| MARC J. HARRIS, | : | |
| | : | |
| Appellant | : | |

**OPINION**

**CHIEF JUSTICE TODD**                    **DECIDED: February 22, 2023**

This Court granted the Petition for Certification of Question of Law filed by the United States Court of Appeals for the Third Circuit ("Third Circuit") to address the single issue of whether Pennsylvania's first-degree aggravated assault provision, codified at 18 Pa.C.S. § 2702(a)(1), requires some use of physical force. For the reasons expressed herein, we answer this inquiry in the negative, and hold that the offense of aggravated assault under Section 2702(a)(1) does not require the actor to exercise physical force when inflicting or attempting to inflict serious bodily injury upon the victim.

**I. Background**

The relevant facts are set forth in the Third Circuit's certification petition. Briefly, in 2010, in a federal prosecution, Appellant Marc Harris pled guilty to possession of a firearm by a convicted felon. *See* 18 U.S.C. § 922(g)(1) (providing that it shall be unlawful for a person who has been convicted of a crime punishable by imprisonment for a term

exceeding one year to possess a firearm). This federal offense generally carries a maximum sentence of 10 years imprisonment. *Id.* § 924(a)(2). The United States District Court for the Eastern District of Pennsylvania ("District Court"), however, sentenced Appellant pursuant to the federal Armed Career Criminal Act ("ACCA"), which requires imposition of a mandatory term of 15 years imprisonment where a person who committed a firearm violation pursuant to 18 U.S.C. § 922(g) has three previous convictions of "a violent felony or a serious drug offense, or both." *Id.* § 924(e)(1). Notably, the ACCA defines the term "violent felony" as including any crime punishable by a term of imprisonment exceeding one year that, *inter alia*: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" ("element of force clause").[1]

To determine whether a defendant's prior conviction qualifies as a "violent felony" under the ACCA, the United States Supreme Court requires federal sentencing courts to generally follow a "categorical approach," examining only the statutory definitions – *i.e.*, examining only the elements of a defendant's prior offense, and not the particular facts underlying the prior conviction – and comparing those elements with the ACCA's definition of "violent felony." *Taylor v. United States*, 495 U.S. 575, 600 (1990). The high Court reasoned that Congress did not intend for federal sentencing courts to engage in an elaborate fact-finding process to determine the ACCA-eligible prior convictions, as

---

[1] The ACCA also defines "violent felony" as a crime that: "is burglary, arson, or extortion, [or] involves use of explosives" ("enumerated offenses clause"); or "otherwise involves conduct that presents a serious potential risk of physical injury to another" ("residual clause"). 18 U.S.C. § 924(e)(2)(B). In 2015, the United States Supreme Court in *Johnson v. United States*, 576 U.S. 591 (2015), invalidated the residual clause, finding that it was unconstitutionally vague. *Id.* at 606. Thus, the ACCA enhancement applicable to prior violent felonies now applies only if the prosecution satisfies either the element of force clause or the enumerated offenses clause. The high Court subsequently held that *Johnson* applies retroactively on collateral review. *Welch v. United States*, 578 U.S. 120 (2016).

such a procedure was unsupported by the ACCA's statutory language and legislative history, would raise daunting practical difficulties, and would result in potential unfairness. *Id.* at 601.

Relevant here, Appellant was sentenced to the mandatory 15-year ACCA sentence based, in pertinent part, on his prior conviction of aggravated assault under 18 Pa.C.S. § 2702(a)(1), which provides:

> § 2702. Aggravated assault
>
> (a) Offense defined.--A person is guilty of aggravated assault if he:
>
> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

*Id.*[2]

In 2016, Appellant filed a *habeas corpus* motion in the District Court, seeking correction of his ACCA sentence in light of the high Court's 2015 ruling in *Johnson*, on the theory that his prior Pennsylvania convictions for robbery and aggravated assault qualified as violent felonies under the ACCA only pursuant to the clause stricken in *Johnson*, thereby rendering Appellant's ACCA sentence illegal.[3]  The District Court denied the *habeas corpus* motion without explanation.  On appeal, the Third Circuit remanded Appellant's claim to the District Court to determine whether a certificate of appealability was warranted.  *See* 28 U.S.C. § 2553(c)(1) (providing that an appeal in

---

[2] Appellant's other qualifying convictions, not at issue here, were for three robberies in violation of 18 Pa.C.S. § 3701(a)(1) and a controlled substance offense in violation of 35 P.S. § 780-113(a)(30).  *See* Brief for Appellant at 3-4 n.1.

[3] *See supra* note 1.  Appellant's challenges to his ACCA sentence based upon his robbery convictions are not relevant to this matter; thus, they are not detailed herein.

certain *habeas corpus* proceedings challenging a sentence will not lie unless a district court issues a certificate of appealability).

The District Court declined to issue a certificate of appealability, concluding that Appellant's ACCA sentence was legal because two of his prior robbery convictions and his aggravated assault conviction qualified as violent felonies under the ACCA's element of force clause, and, thus, he had more than three requisite predicate offenses. Appellant subsequently filed a motion for a certificate of appealability in the Third Circuit, which that court granted on the question of whether reliance upon Appellant's robbery and aggravated assault convictions to enhance his sentence under the ACCA violated due process.

The Third Circuit thereafter *sua sponte* filed a Petition for Certification of Question of Law in this Court pursuant to Pa.R.A.P. 3341(c).[4] The petition asserted that the United States Government ("United States") had since conceded that two of Appellant's robbery convictions did not qualify as ACCA predicate offenses, yet it maintained that Appellant still had three convictions of a "violent felony or a serious drug offense" based, in part, on his aggravated assault conviction. Petition for Certification of Question of Law at 4-5. Accordingly, the Third Circuit observed that, to resolve Appellant's appeal, it must determine whether the Pennsylvania aggravated assault conviction qualifies as a violent felony under the ACCA. Because the ACCA's "element of force" clause requires an offense to have an element of "the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), the Third Circuit was tasked

---

[4] Pennsylvania Rule of Appellate Procedure 3341(c) provides, *inter alia*, that this Court may accept certification of a question of law where special and important reasons for granting certification exist, including, but not limited to where: (1) the question is one of first impression and requires prompt and definitive resolution by this Court; (2) there are conflicting decisions in other courts regarding the question; or (3) the question concerns an unsettled issue of the constitutionality, construction, or application of a state statute.

with evaluating whether aggravated assault under 18 Pa.C.S. § 2702(a)(1) has, as an element, the use of physical force.

The Third Circuit acknowledged that it had already decided that precise issue in *United States v. Mayo*, 901 F.3d 218 (3rd Cir. 2018), and concluded that aggravated assault pursuant to Section 2702(a)(1) could not serve as an ACCA predicate offense because it had no element requiring the use of force. Petition for Certification of Question of Law at 5-6 (citing *Mayo*, 901 F.3d at 230).[5] Critically, however, the Third Circuit maintained that the *Mayo* decision was based upon a single case decided by an intermediate Pennsylvania appellate court in *Commonwealth v. Thomas*, 867 A.2d 594 (Pa. Super. 2005). Petition for Certification of Law at 5 (citing *Thomas*, 867 A.2d at 597, 602).

In *Thomas*, the defendant was convicted under Section 2702(a)(1) of the aggravated assault of her four-year-old son after she starved him to death. On appeal, the defendant contended that there was insufficient evidence to support the conviction because the Commonwealth's evidence failed to demonstrate either the threat or use of force. The Superior Court rejected the defendant's contention, holding that "evidence of

---

[5] The Third Circuit in *Mayo* found that the term "physical" in "physical force" refers to "force exerted by and through concrete bodies," which "distinguish[es] physical force from, for example, intellectual force or emotional force." *Mayo*, 901 F.3d at 226 (citing *Johnson v. United States*, 559 U.S. 133, 138 (2010) (citing Webster's New International Dictionary 986 (2nd ed. 1954)). It further found that "physical force" denotes "[f]orce consisting in a physical act," such as "a violent act directed against a robbery victim." *Id.* The *Mayo* court observed that, on its face, Section 2702(a)(1) does not include an element of "physical force." *Id.* at 227. Instead, it held that Section 2702(a)(1) depends upon the causation or attempted causation of serious bodily injury. *Id.* at 228. Relying on Pennsylvania intermediate appellate court case law discussed *infra*, the *Mayo* court reasoned that physical force and bodily injury are not coterminous, and Section 2702(a)(1) requires causing or attempting to cause serious bodily injury, "regardless of whether that injury results from any physical force." *Id.* at 229. The *Mayo* court concluded that, because Section 2702(a)(1) criminalizes certain acts of omission, it "sweeps more broadly than the ACCA's definition of 'physical force,'" and it, therefore, does not qualify as a predicate offense under the ACCA. *Id.* at 230.

the use of force or the threat of force is not an element of the crime of aggravated assault." *Thomas*, 867 A.2d at 597. The court observed that the defendant offered no authority to suggest that Pennsylvania courts ever required proof of the use or threat of force to sustain a conviction of aggravated assault. *Id.* Additionally, the Superior Court referenced extensive evidence detailing how the defendant isolated her son from contact with others, left the child alone in the residence, starved him, failed to obtain medical assistance for him, and forced him to live in inhumane conditions. *Id.* at 598-99. This evidence, the Superior Court concluded, demonstrated that the defendant attempted to cause and did cause serious bodily injury to her son, resulting in his death by starvation, and that she intentionally, knowingly, or recklessly did so, manifesting extreme indifference to the value of human life, sufficient to sustain her conviction of aggravated assault under Section 2702(a)(1). *Id.* at 602.

In its petition for certification, the Third Circuit also highlighted the United States' contention that *Mayo* was wrongly decided because: (1) *Thomas* expressed only the view of a panel of an intermediate appellate court, not this Court; and (2) the *Thomas* facts, *i.e.*, starving a child to death, necessarily involved the use of physical force as defined in the ACCA. Asserting that it had found no other published Pennsylvania decision supporting the view expressed in *Thomas*, the Third Circuit submitted that it could not predict how this Court would decide the issue. Accordingly, it concluded that the legal question satisfied the standard for certification as it involved "[t]he question of law [which] concerns an unsettled issue of the constitutionality, construction or application of a statute of this Commonwealth." Pa.R.A.P. 3341(c)(3). The Third Circuit posited that a determination from this Court on the question would enable it to resolve the applicability

of the ACCA's sentencing enhancement for Appellant, as well as those similarly situated who have a prior conviction under Section 2702(a)(1).[6]

This Court subsequently granted the Petition for Certification of Question of Law to consider the following issue, as framed by the Third Circuit:[7]

> Whether the Pennsylvania First-Degree Aggravated Assault provision, codified at 18 Pa. Cons. Stat. § 2702(a)(1), requires some use of physical force, as the [United States] contends, or, instead, as the Pennsylvania Superior said in *Commonwealth v. Thomas*, 867 A.2d 594, 597 (Pa. Super. Ct. 2005), the statute means that "the use of force or threat of force is not an element of the crime . . . ."

*United States v. Harris*, 272 A.3d 1286 (Pa. 2022) (table).

Because this matter involves the interpretation of a Pennsylvania criminal statute and a Commonwealth prosecutor was not an advocate in the case, this Court invited the Office of Attorney General ("Commonwealth") to submit a brief and participate in oral argument regarding the certified issue to represent the Commonwealth's interests.[8]

## II. Arguments

Appellant argues that the proper response to the certified question is to hold that the use or threatened use of physical force is not required by Section 2702(a)(1) because the plain text of the provision does not include physical force as an element of the offense. He observes that, contrary to Section 2702(a)(1), the General Assembly defined a separate aggravated assault offense at Section 2702(a)(6), affirmatively requiring that the threatened serious bodily injury be inflicted in a particular manner. Brief for Appellant at 14 (citing 18 Pa.C.S. § 2702(a)(6) (defining second-degree aggravated assault as

---

[6] Appellant filed an application for reconsideration in the Third Circuit, contending that the certification petition was inappropriate because the issue sought to be certified had been decided in *Mayo*. The Third Circuit denied the motion without explanation.

[7] The United States did not challenge the Third Circuit's articulation of the question sought to be certified.

[8] As discussed below, the Commonwealth agreed to participate in this matter.

"attempt[ing] by physical menace to put [enumerated individuals] in fear of imminent serious bodily injury")). Appellant submits that this Court may not add an element requiring physical force when the statutory text of Section 2702(a)(1) does not expressly include it. He also observes that the Pennsylvania Suggested Standard Criminal Jury Instruction on aggravated assault does not contain any reference to an element requiring physical force. *Id.* at 13 (citing Pa.S.S.J.I. (Criminal) § 15.2702A-B).

Appellant contends that the Superior Court analyzed the issue properly in *Thomas* in holding that "the use of force or the threat of force is not an element of the crime of aggravated assault." *Thomas*, 867 A.2d at 597. This was not *dicta*, he maintains, because the court was responding to the precise issue of whether physical force is an element of aggravated assault under Section 2702(a)(1). Appellant emphasizes that this Court had the opportunity to review the substantive issue in *Thomas*, but denied the defendant's petition for allowance of appeal. Brief for Appellant at 15 (citing *Commonwealth v. Thomas*, 885 A.2d 533 (Pa. 2005) (table)). He asks this Court not to deviate from *Thomas*.

In Appellant's view, the Third Circuit in *Mayo* properly concluded that Section 2702(a)(1) sets forth only two elements for aggravated assault: (1) causing or attempting to cause serious bodily injury; and (2) a *mens rea* of intentional, knowing, or reckless conduct with extreme indifference to the value of human life. He maintains that the *Mayo* Court then looked to Pennsylvania case law, *i.e.*, the Superior Court's decision in *Thomas*, which held expressly that physical force is not an element of the offense.

Again distinguishing Section 2702(a)(1) from other aggravated assault offenses, Appellant cites the Third Circuit's decision in *United States v. Ramos*, 892 F.3d 599 (3rd Cir. 2018), which held that Section 2702(a)(4), defining aggravated assault by a deadly weapon, constitutes an ACCA-predicate offense because the plain text of the provision

entails the use, attempted use, or threatened use of force by a deadly weapon.[9] He reasons that the instant case is distinguishable from *Ramos* because there is no similar force element required by Section 2702(a)(1). Accordingly, Appellant requests that we answer the certified question by holding that physical force is not an element of aggravated assault under Section 2702(a)(1).

The United States initially responds by challenging the Third Circuit's articulation of the certified question. Interpreting the certified question as whether "physical force" as employed in the ACCA's definition of "violent felony" is an element of Section 2702(a)(1), it asserts that only federal courts, and not this Court, may interpret a federal statute such as the ACCA. Brief for United States at 9 (citing *Johnson*, 559 U.S. at 138 (holding that the meaning of "physical force" under the ACCA is a question of federal law and federal courts are not bound by a state court's interpretation of a similar or identical statute)). The United States suggests that we decline to answer the question as framed by the Third Circuit, and determine instead what conduct suffices to prove a violation of Section 2702(a)(1); specifically, whether the conduct that occurred in *Thomas* was sufficient to sustain a conviction under Section 2702(a)(1).

To explain, the United States observes that the federal courts apply a categorical approach when determining whether a previous conviction qualifies as an ACCA predicate offense, examining only the fact that the prior conviction occurred, and not the factual predicate underlying the conviction. It emphasizes that federal courts applying the ACCA are focused upon "the minimum conduct criminalized by the state statute," based not on a theoretical possibility, but upon how the state has applied the statute in adjudicated cases. Brief for United States at 15-16 (citing *Gonzales v. Duenas-Alvarez*,

---

[9] Section 2702(a)(4) provides that a person is guilty of aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S. § 2702(a)(4).

549 U.S. 183, 193 (2007)).[10]   The United States interprets *Gonzales* as narrowing this Court's inquiry to determining whether the extant Pennsylvania jurisprudence on the issue, *i.e.*, the Superior Court's decision in *Thomas,* represents a correct interpretation of Section 2702(a)(1), and not theorizing about hypothetical circumstances under which one may commit first-degree aggravated assault, with or without physical force, under that provision.

Focusing on *Thomas*, the United States maintains that the Superior Court was only partially correct in its decision.  It agrees with *Thomas'* conclusion that there was sufficient evidence to establish first-degree aggravated assault under the facts presented because murder by starvation clearly involves the infliction of "serious bodily injury," necessary to establish the crime.[11]  The United States, however, opines that *Thomas'* declaration that physical force is not an element of that offense is erroneous.  The crux of its argument in this regard is that physical force is an element of first-degree aggravated assault in Section 2702(a)(1) because the element of infliction of serious bodily injury necessarily requires proof of physical force.  The United States submits that it would be impossible to starve an individual without some degree of physical force, whether it involves

---

[10] In *Gonzales*, the high Court ruled that, for a federal court to conclude that a state statute creates a crime outside of the generic definition of a crime enumerated in a federal statute, the offender must demonstrate "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales*, 549 U.S. at 193.  To demonstrate that realistic probability, the offender must establish that the state courts applied the statute in the manner advocated by the offender either in his own case or in other adjudicated state cases.  *Id.*

[11] Specifically, the United States recounts that the four-year-old victim in *Thomas* was generally kept hidden; was kept in his bedroom much of the time as punishment for bed wetting; was also forced to remain in a bathroom for hours at a time; was rarely seen by friends and neighbors, unlike other children in the family; was confined without food as evidenced by the discovery of inedible materials discovered in his GI tract and stomach; and had cracked ribs, weighed twenty pounds and was under 2½ feet tall.  Brief for United States at 18 (citing *Thomas*, 867 A.2d at 596-99).

confinement of an adult to whom sustenance is not provided, or the total control that a parent may exert over a small child, such as occurred in *Thomas*.

In support of its construction of Section 2702(a)(1), the United States relies on cases interpreting "physical force" in federal statutes, particularly *United States v. Castleman*, 572 U.S. 157, 169 (2014) (holding that the requirement of "physical force" appearing in a federal firearms statute was satisfied by a prior Tennessee conviction for the "misdemeanor crime of domestic violence" because the state offense contained an element of "causation of bodily injury" and "the knowing or intentional causation of bodily injury necessarily involves the use of physical force"). *See* Brief for United States at 11. The United States opines that such rulings are based upon the recognition that physical force need not be applied directly, but may be applied indirectly, for example, by administering a poison or infecting an individual with a disease. *Id.* at 12-13 (citing, *e.g., U.S. v. Chapman*, 866 F.3d 129, 133 (3rd Cir. 2017) (holding that the use of physical force may be applied indirectly; it involves "the intentional employment of something capable of causing physical pain or injury to another person, regardless of whether the perpetrator struck the victim's body")).

Recognizing that, under 18 Pa.C.S. § 301(a), a criminal conviction in Pennsylvania generally requires volitional conduct and not a mere omission to act, the United States acknowledges that an omission to act suffices where the statute so provides and where "a duty to perform the omitted act is otherwise imposed by law," *id.* § 301(b), such as a parental duty. Brief of United States at 20. Thus, it maintains, a person may commit first-degree aggravated assault by starving a person to death, as occurred in *Thomas*, either through the volitional acts described in that case or by willfully not performing an act required by law as a parent or guardian. *Id.* The United States concludes that we should

answer the certified question by holding that Section 2702(a)(1), given that it requires proof of "serious bodily injury," necessarily requires the use of "physical force." [12]

In response to our invitation to participate in this matter, the OAG filed a brief on behalf of the Commonwealth in which it takes a position consistent with that of the United States, agreeing that Section 2702(a)(1) requires the exercise of physical force. The Commonwealth reasons that Section 2702(a)(1) was "copied consciously" from the Model Penal Code ("MPC"), and is a codification of common law assault and battery, which expressly required the use of physical force. Brief for Commonwealth at 2. Notwithstanding the lack of a reference to physical force in the statutory language, the Commonwealth maintains that the element of physical force is embodied in Section 2702(a)(1)'s phrase "to cause serious bodily injury." In support of this proposition, the Commonwealth cites the Commentaries to the MPC, which, it asserts, explain that the common law crimes of assault and battery that are now consolidated under the MPC "covered any unlawful application of force to the person of another." *Id.* at 5 (emphasis omitted) (citing Model Penal Code & Commentaries, pt. II, §§ 210.0-213.6, at 175, 184 (Am. Law Inst. 1980) ("MPC Commentaries")). It also relies upon the MPC Commentaries when endorsing the United States' view that physical force can be applied either directly, as by a blow of the fist, or indirectly, as by the use of a mechanical agent, administering of a narcotic, exposing another to inclement weather, or abandoning a young child. *Id.* at 5-6 (citing MPC Commentaries at 175, 187, 188 n.59).

Additionally, the Commonwealth concurs with the United States' assessment of the Superior Court's decision in *Thomas*, finding that the acts committed by the defendant

---

[12] The United States includes in its appellate brief its "preview" argument that it plans to present to the Third Circuit upon this Court's resolution of this matter regarding the application of the ACCA to Appellant's case. *See* Brief for United States at 21-26. We decline to elaborate on this argument, as it is not relevant to our resolution of the certified question.

there were not "forceless," but merely the exercise of indirect force. The one-sentence contrary assertion of the Superior Court in *Thomas*, it posits, was an ill-considered aside, unsupported by any authority or discussion, which has never been relied upon by any subsequent court. The Commonwealth submits that, when read in its entirety, *Thomas'* sustaining of the defendant's conviction of aggravated assault was based upon an extended analysis of the evidence presented at trial, which demonstrated that the defendant affirmatively kept her four-year-old son physically isolated from sustenance until he starved to death. These acts, it contends, constitute an exercise of physical force. The Commonwealth maintains that no other reported Pennsylvania decision has ever held that aggravated assault is a "forceless" crime, primarily because "force is the thing that causes bodily injury." Brief for Commonwealth at 11.

In his reply brief, Appellant refutes the United States' contention that this Court certified the wrong question, and submits that we lack authority to alter the Third Circuit's articulation of a certified question. He also objects to the United States' assertion that this Court's inquiry is limited to determining only whether the conduct that occurred in *Thomas* was sufficient to sustain a conviction under Section 2702(a)(1), and asserts that this Court may fully examine the question as certified.

Appellant observes that both the United States and the Commonwealth appear to agree that the willful nonperformance of an act required by law, such as a parent's willful and seriously injurious abandonment of his or her child, is sufficient to convict under Section 2702(a)(1). In his view, this is a concession that the threat or use of physical force is not an element of first-degree aggravated assault, as it demonstrates that the statute's *actus reus* element is causing or attempting to cause serious bodily injury, and not using or threatening to use physical force.

Appellant further finds misplaced the Commonwealth's reliance upon the MPC Commentaries to support the proposition that physical force is an element of Section 2702(a)(1). In his view, the MPC Commentaries confirm that the offensive contact requirement of common law battery has been abandoned, and criminal liability no longer hinges upon a particular contact with the victim or the use of physical force. Reply Brief for Appellant at 12 (citing MPC Commentaries at 187). Appellant reasons that, by eliminating the contact requirement entirely, the MPC eliminated the common law requirement of physical force – namely, force exerted by and through concrete bodies. *Id.* Additionally, Appellant contends, the MPC expanded assault to encompass the full scope of modern attempt liability, thereby permitting an aggravated assault conviction based upon substantial steps that do not involve physical force.

### III. Analysis

As a threshold matter, we are unpersuaded by the United States' contention that the certified question inappropriately calls upon this Court to determine whether "physical force," as set forth in the ACCA's definition of violent felony, is an element of Section 2702(a)(1). We are cognizant that the meaning of "physical force" as employed in the ACCA is a question of federal law, and that federal courts are not bound by a state court's interpretation of a similar or identical state statute. *Johnson*, 559 U.S. at 138. Contrary to the United States' contention, however, the certified question does not seek a determination as to the meaning of "physical force" as employed in ACCA.

Rather, the certified question as posed by the Third Circuit queries only whether Section 2702(a)(1) requires some use of physical force. This narrow inquiry is a question of state law, and federal courts are bound by state supreme courts' interpretations of state law. *Id.* at 138 (acknowledging that the high Court was bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements of Florida's

battery statute). Similarly, because the interpretation of Section 2702(a)(1) is a question of state law, the federal cases interpreting "physical force" as set forth in federal statutes, particularly *United States v. Castleman*, *supra*, have no relevance.[13]

We further reject the United States' suggestion that our review of the certified question must be cabined only to an examination of whether the conduct in *Thomas* was sufficient to establish aggravated assault, as the Third Circuit did not present that issue for our review. Finally, in *Official Committee of Unsecured Creditors v. PriceWaterhouseCoopers, LLP*, 989 A.2d 313 (Pa. 2010), this Court recognized that, when resolving certified issues, we decline to proceed beyond those inquiries which we were expressly requested to address, and "confine ourselves as closely as possible to the certified questions." *Id.* at 327-28. We adhere to those limiting principles herein, and now turn to the certified question before us.

In determining whether physical force is an element of Section 2702(a)(1), we observe that "'[e]lements' are the 'constituent parts' of a crime's legal definition — the things the 'prosecution must prove to sustain a conviction.'" *Mathis v. United States*, 579 U.S. 500, 504 (2016) *(*citing Black's Law Dictionary 634 (10th ed. 2014)). The elements of a crime are distinguishable from "facts," which, are "'circumstance[s]' or 'event[s]'

---

[13] In addition, we find that the *Castleman* decision is distinguishable. There, the high Court held that Congress intends to incorporate into legislation the well-settled meaning of common law terms that it employs; thus, the Court attributed the common-law meaning of "force" to the definition of "misdemeanor crime of domestic violence," as that phrase was used in a federal firearms statute precluding the possession of firearms by individuals convicted of such offense. *Castleman*, 572 U.S. at 168. In doing so, the Court found that the defendant's previous conviction of intentionally or knowingly causing bodily injury to the mother of his child qualified as a misdemeanor crime of domestic violence because it satisfied the common-law concept of "force." *Id.* at 170. Here, we are not examining what constitutes common law force for purposes of interpreting a federal statute. Instead, we are considering whether Section 2702(a)(1) of our Crimes Code, which criminalizes the causing or attempting to cause "serious bodily injury," restricts criminal liability exclusively to cases involving injuries inflicted by means of physical force, thereby rendering physical force an element of the offense.

having no 'legal effect [or] consequence.'" *Id. (*citing Black's Law Dictionary 709). There may be alternative means by which an element of a criminal offense may be satisfied, as demonstrated by the facts of each particular case. *Id.* at 508.

As we proceed to construe Section 2702(a)(1) to decipher its elements, we are mindful of our duty under the Statutory Construction Act, 1 Pa.C.S. § 1901 *et seq.*, "to ascertain and effectuate the intention of the General Assembly." *Id.* § 1921(a). When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent. *Gregg v. Ameriprise Financial, Inc.*, 245 A.3d 637, 647 (Pa. 2021). To aid in the determination of legislative intent, we examine the text of the statute in context and give the words and phrases their "common and approved usage." *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1027-28 (Pa. 2018). When the words of a statute "are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). We construe every statute, if possible, to give effect to all of its provisions. *Id.* § 1921(a). Further, this Court has found guidance in the MPC when interpreting statutes that were derived therefrom. *Commonwealth v. Gamby*, 283 A.3d 298, 308-09 (Pa. 2022) (finding it entirely reasonable to examine the MPC when interpreting the indecent assault statute at issue, which derived from the MPC).

Turning to Section 2702(a)(1), we note that this provision was enacted as part of the Crimes Code in 1972, and derived from Section 211.1(2) of the MPC, which we discuss more fully *infra*. Section 2702(a)(1) has not been amended since its enactment. As noted, the text of this provision states that an individual is guilty of aggravated assault if the person "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). As advocated by

Appellant, there is no express element in Section 2702(a)(1) requiring the use or attempted use of physical force, or any reference to force at all.

Our inquiry, however, is not so readily resolved, as the United States and the Commonwealth posit that the General Assembly's use of the phrase "serious bodily injury" necessarily encompasses the exercise of "physical force," thereby rendering physical force an element of the offense. We respectfully disagree.

We first observe that the phrase "serious bodily injury" is specifically defined in the Crimes Code as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."[14] 18 Pa.C.S. § 2301. This definition focuses upon the nature of the "injury," not the particular force required to inflict such injury. Notably, there is no reference in the definition of "serious bodily injury" to the manner by which an injury must be inflicted, *i.e.*, by force of a physical nature, by psychological or emotional force, by an act of omission, or by other means.[15] Had the General Assembly intended the phrase "serious bodily injury" to restrict Section 2702(a)(1)'s scope to injuries inflicted by the use or attempted use of physical force, it likely would have so indicated in its express definition of that phrase. *See Commonwealth v. Johnson*, 26 A.3d 1078, 1090 (Pa. 2011) (*quoting Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001) (cautioning that when interpreting statutes, although "one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say")).

---

[14] This statutory definition of "serious bodily injury" as it relates to aggravated assault is likewise derived from the MPC, and appears verbatim in MPC § 210.0(3).

[15] The term "physical" in reference to the phrase "physical force" is commonly understood to refer to "force exerted by and through concrete bodies," which "distinguish[es] physical force from, for example, intellectual force or emotional force." *Johnson*, 559 U.S. at 138 (citing Webster's New International Dictionary 986 (2nd ed. 1954)).

Further, considering Section 2702(a)(1) in the context of the other subsections in that provision, it is clear that the General Assembly was cognizant of how to codify the manner of causing a particular bodily injury as an element of the crime. *See* 18 Pa.C.S. § 2702(a)(4) (providing for criminal liability for aggravated assault where a person "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon"); *id.* § 2702(a)(6) (providing for criminal liability for aggravated assault where a person "attempts by physical menace" to put enumerated individuals in fear of imminent serious bodily injury). The legislature did not restrict the manner of causing or attempting to cause serious bodily injury in subsection (a)(1), and we decline the invitation to do so by judicial fiat. *See Commonwealth v. Hart*, 28 A.3d 898, 911 (Pa. 2011) (providing that "[i]t is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include" (internal citation omitted)).

The Superior Court's analysis in *Thomas* is consistent with this interpretation of Section 2702(a)(1). The precise issue presented in *Thomas* was whether the evidence was sufficient to sustain the defendant's conviction of aggravated assault under Section 2702(a)(1) where "the Commonwealth failed to demonstrate either the use of force or the threat of force." *Thomas*, 867 A.2d at 597. As noted, the disturbing facts of *Thomas* established that the defendant starved her four-year-old son, failed to obtain timely medical assistance for him, and compelled him to live in such "filthy and inhumane conditions" that the child resorted to "eating human hair, insulation, and mattress stuffing." *Id.* at 602. The child ultimately died from his injuries.[16]

Responding to the defendant's specific contention that her aggravated assault conviction was infirm due to the Commonwealth's failure to present evidence of physical

---

[16] The defendant in *Thomas* was also charged with murder in the third degree, but the jury was unable to reach a verdict on that charge. *Id.* at 595.

force, the Superior Court held, based on the plain text of the provision, that "evidence of the use of force or the threat of force is not an element of the crime of aggravated assault." *Id.* at 597. The *Thomas* court found that the defendant "offered nothing which demonstrates that the Pennsylvania Courts have ever required proof of the use of force or the threat of force to sustain a conviction for aggravated assault." *Id.* The court reiterated that the defendant's actions were sufficient to demonstrate that she "attempted to cause, and did cause, serious bodily injury to [her son], resulting in his death by starvation, and she intentionally, knowingly, or recklessly did so, manifesting extreme indifference to the value of human life." *Id.* at 602. We agree with this reasoning, as we have likewise found no statutory textual limitation to the manner by which serious bodily injury must be attempted or inflicted to satisfy the elements of first-degree aggravated assault under Section 2702(a)(1).

Similar to the defendant in *Thomas*, neither the United States nor the Commonwealth offers a single Pennsylvania case, decided in the 50 years since the enactment of Section 2702(a)(1), which concludes that the statute requires the use or attempted use of physical force to establish a "serious bodily injury."[17] Additionally, while

---

[17] Moreover, *Thomas* is not the only Pennsylvania decision where an aggravated assault conviction pursuant to Section 2702(a)(1) was upheld absent evidence of physical force. While not authoritative on this issue as the sufficiency challenge was limited to the intent element, the Superior Court in *Commonwealth v. Bullock*, 170 A.3d 1109 (Pa. Super. 2017), found sufficient evidence to sustain the defendant's conviction under Section 2702(a)(1) where the defendant verbally abused his elderly mother who resided in his home; kept her in deplorable conditions; isolated her and interfered with attempts of others to assist her; and directed his utility provider to shut off his electricity after he was expressly informed that his mother required electricity for her oxygen machine, which enabled her to breathe. *Id.* at 1119-20. Further, the Superior Court in *Commonwealth v. Taylor*, 2015 WL 7576457 (Pa. Super. 2015) (unpublished memorandum), found sufficient evidence to sustain a conviction under Section 2702(a)(1) where the defendant caused serious bodily injury to her six-year-old twins by failing to feed them sufficiently and by neglecting them, resulting in malnutrition, slowed growth, deformed legs, language delays, and an overall failure to thrive, demonstrating a reckless manifestation of an (continued…)

not dispositive, we observe, as does Appellant, that the Pennsylvania Suggested Standard Criminal Jury Instruction on aggravated assault does not contain any reference to the use or attempted use of physical force. Pa.S.S.J.I. (Criminal) § 15.2702A-B.

Rather than offering Pennsylvania case law to support their position, the United States and the Commonwealth rely primarily upon the fact that the aggravated assault provision at issue is derived from the MPC, and they interpret the MPC Commentaries as supporting the view that physical force has historically been required for that offense. They reason that Section 211.1(2) of the MPC consolidated the common law crimes of assault and battery, which involved the application of force to another; thus, they contend the element of force in those common law crimes, by necessary implication, continues in Section 2702(a)(1) of the Crimes Code. The United States and the Commonwealth also devote substantial argument in an effort to establish that physical force can be applied both directly and indirectly. While the MPC Commentaries lend credence to some of these sentiments, the Commentaries do not, in our view, suggest that Section 2702(a)(1) codified an element of physical force.

Initially, we note that there is no express requirement regarding the use or attempted use of physical force in Section 211.1(2) of the MPC, from which Section 2702(a)(1) is derived. *See* 18 Pa.C.S. § 2702, Jt. St. Govt. Comm. Comment – 1967. Nearly identical to Section 2702(a)(1) of our Crimes Code, Section 211.1(2)(a) of the MPC provides that a person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under

---

extreme indifference to the value of human life. These cases set forth concrete examples of how serious bodily injury may be inflicted without the use or attempted use of physical force.

circumstances manifesting extreme indifference to the value of human life."[18] MPC §
211.1(2). As noted *supra*, the MPC's express definition of "serious bodily injury" in
Section 210.0(3) appears verbatim in our Crimes Code's definition in 18 Pa.C.S. § 2301,
and focuses on the nature of the harm attempted or caused, as opposed to the manner
by which the harm is inflicted.

The MPC Commentaries reveal that Section 211.1 of the MPC consolidated the
common law crimes of mayhem, battery, and assault. MPC Commentaries at 172.
Germane to this matter, however, each of these three offenses contained different
elements, and the MPC did not adopt every element of the enumerated common law
offenses.

Common law mayhem "originally consisted of injury permanently impairing the
victim's ability to defend himself," and was later viewed as including "intentional
disfigurement of a permanent, though not necessarily disabling, character." *Id.* at 175.
Common law battery had a broader scope, "cover[ing] any unlawful application of force
to the person of another willfully or in anger." *Id.* This force "could be satisfied directly,
as by a blow of the fist, or indirectly, as by the use of a mechanical agent." *Id.* Notably,
the concept of force "was not limited to actual violence but included any kind of offensive
and unlawful contact." *Id.* Finally, "common-law assault was simply an attempt to commit
a battery." *Id.* at 176. Typical legislation at the time the MPC was drafted described
assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury
on the person of another." *Id.* at 176-77. There was no crime of aggravated battery or
aggravated assault at common law. *Id.* at 180.

---

[18] The only difference between the two provisions is that the MPC version employs the
term "purposely," while Section 2702(a)(1) uses the word "intentionally." *Compare* MPC
§ 211.1(2)(a) *with* 18 Pa.C.S. § 2702(a)(1).

States subsequently became concerned because common law offenses of mayhem and battery required actual contact with the victim, and unsuccessful attempts at such contact constituted a mere assault, punishable under common law as a misdemeanor, far less than the penalty imposed for the completed substantive offense, particularly in cases of attempted rape or murder. *Id.* In an effort to increase the penalty for more serious attempt offenses, state legislatures began creating a series of intermediate offenses of "assault with intent to commit" serious predicate offenses, including murder. *Id.* at 182.

To harmonize the jurisprudential treatment of assaults, Section 211.1 of the MPC substantially restructured the prior law by eliminating common law categories and the many antecedent statutory variations, and adopting a single integrated offense of aggravated assault. MPC Commentaries at 183. Relevant here, and as emphasized by Appellant, the MPC drafters eliminated the requirement of offensive contact from the specific offenses at issue, and included attempt as part of the assault offense. *Id.* at 184, 185. This resulted in the discontinuance of the series of assault "with-intent-to" offenses that state legislatures had created to harmonize the disparity between the drastic penalties authorized for serious offenses and the relatively light sentences imposed under common law for crimes of attempt to commit those serious offenses. *Id.* at 184.

Accordingly, in lieu of the common law requirement of offensive contact required for a battery, which had generally been accomplished by the infliction of force upon another, the MPC drafters inserted a prerequisite of causing or attempting to cause specific harm, *i.e.,* serious bodily injury, defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ" in MPC § 210.0(3). Critically, the "principal thrust" of the MPC provision at issue was to encompass the

infliction of "physical injury." MPC Commentaries at 187. The manner in which that injury was inflicted was not set forth in MPC § 211.1(2)(a).

In their arguments to this Court, the United States and the Commonwealth rely on the MPC Commentaries' discussion of "physical injury" to support their contentions relating to "physical force." However, the two are not synonymous. The infliction of "physical injury" is encompassed in the MPC by the concepts of "bodily injury" (as in simple assault) and "serious bodily injury" (as in aggravated assault). MPC Commentaries at 187. Elaborating on the "causing bodily injury" element of simple assault in Section 211.1(1) of the MPC, the Commentaries explain that "bodily injury" "includes more than the consequences of direct attack. It also covers pain, illness, or physical impairment caused indirectly, as, for example, by exposing another to inclement weather or by non-therapeutic administration of a drug or narcotic." *Id.* at 187. Thus, the Commentaries continue, it is unnecessary to make special provisions for these physical types of harms, as some state statutes existing at the time had done. *Id.* at 187-88 n.59. Rather than suggesting that physical force is an element of assault, this discussion merely indicates that the physical injury or "bodily injury" requirement of simple assault is satisfied by injuries caused by either direct or indirect force, so long as the requisite harm has been suffered.

While the indirect use of physical force may be sufficient to sustain an assault conviction if the requisite bodily injury is inflicted, direct or indirect application of physical force is not required. Stated differently, the exercise of direct or indirect physical force is a means by which serious bodily injury can be inflicted, but it is not the exclusive means. As the *Thomas* decision concludes, serious bodily injury may be caused or attempted under Section 2702(a)(1) by acts of omission, without the use or attempted use of physical

force.[19]  While the United States disputes whether the defendant in *Thomas* employed physical force, it concedes that a person may commit first-degree aggravated assault by starving a person to death by willfully not performing an act required by law, as a parent or guardian.  Brief for United States at 20.  In our view, such a willful failure to act does not encompass physical force, and yet satisfies Section 2702(a)(1) where the Commonwealth proved that serious bodily injury was attempted or caused.

In short, we reject the view that the MPC drafters intended to limit "bodily injury" or "serious bodily injury" to those cases where the injuries were inflicted by "physical force." We conclude that the aggravated assault statute at issue does not tether criminal liability to the use or attempted use of physical force but, instead, to the infliction of a specified harm, *i.e.*, serious bodily injury, regardless of the means by which the harm is inflicted.

*IV. Conclusion*

We decline the invitation to engraft an element into the statute, *i.e.*, the use or attempt to use physical force, which the Legislature did not see fit to include.  In light of the foregoing, we respond to the certified question by holding that the use or attempted use of physical force is not an element of the crime of aggravated assault under Section 2702(a)(1), and thus the Commonwealth need not prove physical force to sustain a conviction for that offense.  The use or attempted use of physical force is merely a means by which the element of causing, or attempting to cause, serious bodily injury may be accomplished.

---

[19] We need not engage in a discussion of the myriad means by which serious bodily injury may be caused or attempted without physical force.  Our confirmation that acts of omission may result in serious bodily injury absent physical force is sufficient to answer the certified question before us.  We observe, however, that the certified question was limited to whether Section 2702(a)(1) requires some use of "physical" force.  Accordingly, we do not address whether serious bodily injury could also be caused or attempted by non-physical force, *i.e.*, psychological or emotional force, so long as the other requisites of Section 2702(a)(1) have been satisfied.

Question answered. Jurisdiction relinquished.

Justices Donohue, Dougherty, Wecht, Mundy and Brobson join the opinion.

Justice Mundy files a concurring opinion in which Justice Dougherty joins.

The Late Chief Justice Baer did not participate in the decision of this matter.